# United States Court of Appeals
## For the First Circuit

No. 11-1985

FÁBRICA DE MUEBLES J.J. ÁLVAREZ, INCORPORADO,

Plaintiff, Appellant,

v.

INVERSIONES MENDOZA, INC.; FRANK C. STIPES; MIGUEL A. VÁZQUEZ; XL
SPECIALTY INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY;
ACE INSURANCE CO.; WILLIAM M. VIDAL-CARVAJAL; XL PROFESSIONAL;
LIBERTY INTERNATIONAL UNDERWRITERS, INC.; CHARTIS INSURANCE
CORPORATION OF PUERTO RICO,

Defendants, Appellees,

FEDERAL DEPOSIT INSURANCE CORPORATION; BANCO POPULAR DE PUERTO
RICO, as Successor in Interest of Westernbank de Puerto Rico;
ROSA VICENS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Rafael González Vélez, with whom González Vélez Law
Office was on brief, for appellant.
Roberto Busó-Aboy for appellee Miguel A. Vázquez.
Manuel A. Pietrantoni, Casellas Alcover & Burgos, P.S.C.,
Benjamin C. Eggert, and Wiley Rein LLP on brief for appellee XL
Specialty Insurance Company.

June 4, 2012

**LYNCH, Chief Judge**.  Fábrica de Muebles J.J. Álvarez, Inc. ("Álvarez") brought suit against a bank whose successor is Banco Popular de Puerto Rico ("BPPR"), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, as well as under several Puerto Rico law causes of action.  The suit alleged that Westernbank, BPPR's predecessor in interest, swept funds from an escrow account held in plaintiff's interest.  Plaintiff appeals both from the dismissal of the case following a partial settlement and from the denial of its two motions for reconsideration.  We affirm.

I.

On December 1, 2004, plaintiff Álvarez entered into a written agreement to sell a furniture business, including the real estate and goods, to Inversiones Mendoza, Inc. ("Mendoza").  Westernbank agreed to finance the transaction.  At the time of the closing, Westernbank provided funds for a partial payment for the property and obtained a first mortgage to guarantee both the loan and other monies which Mendoza owed to the bank.  The unpaid portion of the sale became a deferred payment, and Mendoza signed a mortgage note for $750,000.

Westernbank demanded that the parties submit a written consignment contract to the bank for its approval.  In response, plaintiff and Mendoza executed a consignment agreement establishing that all the consigned goods in the hands of Mendoza were, and

-3-

would remain, the exclusive property of plaintiff, as would the product of the sale of the goods. The product of these sales, together with all sales records and related documents, would be delivered to plaintiff. Plaintiff would then pay Mendoza the corresponding amounts in accordance with the consignment agreement. Plaintiff then deposited consigned goods, with a cost of $1,503,900, with Mendoza. These goods had an expected sales value of more than $6,000,000.

On August 29, 2004, the parties opened what plaintiff alleges was an escrow account at Westernbank under the name of Francisco Mendoza, Inc. d/b/a J.J. Álvarez, Account No. 204013356, for the purpose of depositing the funds generated from the sale of the consigned goods. At the time the account was opened, Mendoza was party to a separate security agreement with Westernbank that allegedly gave Westernbank control over all accounts where Mendoza deposited funds. Plaintiff alleges that Westernbank provided assurances that the escrow account would not be subject to the separate security agreement with Mendoza, and that Westernbank agreed that it would hold and manage said account for the benefit of plaintiff, and make, or allow, regular payments, to plaintiff from said account.

Plaintiff alleges that Westernbank did not honor this agreement. Instead, it alleges, Westernbank daily swept and kept money from the escrow account in partial satisfaction of the debts

-4-

owed to it by Mendoza. Similarly, plaintiff alleges that approximately $4.5 million generated by the sale of the consigned goods was transferred directly to Westernbank without ever having been deposited into the escrow account. It claims that Westernbank and its employees exercised absolute financial control over Mendoza. Westernbank enjoyed an irrevocable proxy, signed by the main stockholders of Mendoza, which gave Westernbank full power over Mendoza's stockholder and Board of Directors meetings. In order to make any payments, Mendoza would have to justify the expense to Westernbank, which would then make the funds available to Mendoza for use.

This domineering presence allegedly prevented Mendoza from paying to plaintiff the product of the sale of the consigned goods. Plaintiff alleges that the bank permitted Mendoza to make partial payments to plaintiff, but that the bank required Mendoza to make the payments from a separate rotating account rather than use the funds in the escrow account. Mendoza made these payments, amounting to $366,433, using money loaned to it by the bank, further exacerbating its financial troubles. Mendoza, unable to pay its accumulating debts, eventually defaulted on its payments to plaintiff for the deferred portion of the property purchase.

As a result of its debts, Mendoza filed for Chapter 11 bankruptcy. The appeal in this case is not from the bankruptcy proceedings. Plaintiff, as holder of the mortgage note

-5-

representing the deferred payment, filed its proof of claim in Bankruptcy Court. On September 14, 2007, following Mendoza's bankruptcy petitions, Westernbank filed an interpleader complaint in the Bankruptcy Court, claiming that it had legitimate reasons to fear overlapping liability with respect to the funds which had been deposited in the escrow account. The bank claimed that it did not know who was rightfully entitled to the funds in the escrow account, which at the time of the filing of Mendoza's bankruptcy petition allegedly contained only $241,571.90.

Mendoza entered into two initial settlement agreements. On June 4, 2008, Mendoza agreed to transfer all of its real estate holdings to Westernbank in exchange for release by the bank from all debts owed. On December 9, 2008, plaintiff and Mendoza signed a settlement agreement forgiving Mendoza's unpaid debts. Under the agreement, plaintiff agreed not to collect the outstanding claims it had against Mendoza in exchange for an agreement to lift a stay which would allow plaintiff to collect whatever amounts it could by foreclosing on its mortgage.

## II.

On June 19, 2009, plaintiff Álvarez filed a complaint in the U.S. District Court for the District of Puerto Rico against Westernbank and various John Doe employees and insurance

companies.[1]  The complaint identified five causes of action: (1) "Civil Law Fraud, Breach of Fiduciary Duty, Lender's Liability"; (2) "Violation of R.I.C.O Act"; (3) "Civil Fraud Under Commonwealth Law"; (4) "Recovery of Funds or Property"; and (5) "Foreclosure of Mortgage."  As to the RICO claims, the plaintiff pled violations under subsections (a), (c), and (d) of 18 U.S.C. § 1962.  On September 28, 2009, Westernbank moved to dismiss the complaint for failure to state a claim.  The district court partially granted the motion, allowing only the § 1962(c) RICO claim and the remaining state law claims to survive.  See Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558, 2009 WL 4730776, at *5, *9 (D.P.R. Dec. 4, 2009).

On April 30, 2010, the Commissioner of Financial Institutions of Puerto Rico closed Westernbank's banking operations and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver to liquidate Westernbank.  On the same date, the FDIC sold most of Westernbank's assets to BPPR.  On May 12, 2010, BPPR replaced Westernbank in the present case.

---

[1]  The complaint identifies "John Doe and Richard Roe" as "fictitious names, to be later substituted for the real names, of individuals who, as officers, directors or related persons of Westernbank, maliciously or negligently participated or made possible the incidents that give rise to this action."
The complaint also identifies "Insurance companies 'A', 'B' and 'C'" as "fictitious names, to be later substituted for the real names, of insurance companies that issued policies to cover the damages . . . caused by the bank, its officers, directors or related."

Most significantly, on March 18, 2011, plaintiff agreed at a settlement conference to voluntarily dismiss three of the five causes of action against BPPR: (1) the civil law fraud and breach of fiduciary duty claim, (2) the remaining RICO claim, and (3) the claim of civil fraud under Puerto Rico law. The district court ordered the parties to file, pursuant to the settlement agreement, a stipulation dismissing the three causes of action against BPPR by March 25, 2011. At that point, plaintiff had not identified or served individuals who had been bank officers as defendants.

At the same settlement conference, plaintiff informed the court that it had recently identified insurance companies which had issued policies that would cover the damages in the case. Plaintiff moved to amend the complaint by substituting those companies for the fictitious insurers it had named in the original complaint. In its order granting the motion to amend, the district court explained that it was "reluctant to add new parties at this stage in the case, [but that] plaintiff has shown cause for the delay and the addition of these insurers at this stage may result in the most expedient resolution of a complex matter." Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. Mar. 18, 2011). The court allowed the plaintiff "until March 25, 2011 to amend the complaint to name the insurers." Id. Neither the plaintiff's motion nor the district court order made any reference to Westernbank employees.

-8-

On March 25, 2011, the plaintiff filed an amended complaint naming not only the insurance companies that it had moved to include in the complaint, but also several new Westernbank employees. On April 4, 2011, BPPR objected to plaintiff's inclusion of the Westernbank employees in contravention of the express language of the district court's order.

On March 28, 2011, after the stipulation deadline had passed, BPPR moved to dismiss the causes of action that the plaintiff had agreed to dismiss.[2] BPPR represented that the plaintiff had failed to cooperate or comply with any of its requests to help prepare such a stipulation. The district court granted the motion. Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. Apr. 4, 2011).

On June 28, 2011, the district court ordered the plaintiff to show cause as to why the remaining claims, which it characterized as state law claims, should not be dismissed for lack of subject matter jurisdiction. Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. June 28, 2011).

---

[2] BPPR moved to dismiss four causes of action: the three agreed upon at the settlement conference, as well as a fourth, "recovery of funds or property." The plaintiff filed an opposition to the motion to dismiss, stating that it had not agreed to dismiss the "recovery of funds or property" claim at the settlement conference. Based on this opposition, the district court declined to dismiss the "recovery of funds or property" claim. See Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. July 5, 2011). Plaintiff did not claim that it also had RICO claims against employees.

-9-

It is clear the court considered that all federal claims had been dismissed with the consent of plaintiff. The order stated:

> The court is in the process of reviewing and considering all the pending motions. It appears from the record that on April 4, 2011 (Docket No. 124), the court dismissed the only federal claims before this court, to wit, the RICO claims. Given that the federal RICO claim was dismissed without objection from the plaintiff, the court orders the plaintiff TO SHOW CAUSE on or before Friday, July 1, 2011, as to why the remaining claims should not be dismissed for lack of subject matter jurisdiction, given that there is no federal question or diversity among the parties.

Id.

Plaintiff did not respond to this show cause order within the time directed by the district court. On July 5, 2011, the district court determined that only state claims for mortgage foreclosure and recovery of funds remained at issue in the litigation and declined in its discretion to exercise supplemental jurisdiction over such claims. Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. July 5, 2011).

On July 5, 2011, plaintiff filed a motion for reconsideration, arguing that the case involved questions of bankruptcy law that the district court was more competent to handle than state courts. The district court denied this motion on July 6, 2011 in a brief docket entry that states: "If the Bankruptcy Court retained jurisdiction to entertain controversies regarding the meaning of and compliance with the reorganization plan, any

matter or dispute referring or relating to this plan should be taken up with said court." <u>Fábrica de Muebles J.J. Álvarez, Inc.</u> v. <u>Westernbank de P.R.</u>, No. 09-1558 (D.P.R. July 5, 2011).

On July 21, 2011, the plaintiff filed a second motion for reconsideration, this time arguing for the first time that the district court should retain jurisdiction because it had RICO claims against the Westernbank employees which had never been dismissed. On August 3, the district court denied this motion as well, stating in a brief docket entry: "The court, on reconsideration, ordinarily will not consider any new grounds for relief. However, the proffered reason for finding federal jurisdiction -- interpretation of a bankruptcy court ordered plan within the state law dispute at issue -- is not per se a reason to exercise jurisdiction." <u>Fábrica de Muebles J.J. Álvarez, Inc.</u> v. <u>Westernbank de P.R.</u>, No. 09-1558 (D.P.R. July 21, 2011). On August 4, 2011, plaintiff appealed.

### III.

Plaintiff Álvarez appeals both denials of its motions for reconsideration, as well as the July 5, 2011 dismissal of the case.[3] We address each in turn.

---

[3] Despite language in the plaintiff's appellate brief suggesting otherwise, this appeal does not involve a challenge to the district court's dismissal of the RICO claims against BPPR. The § 1962(c) RICO claim against BPPR was clearly dismissed pursuant to a settlement agreement between the plaintiff and BPPR. Plaintiff did not object to that dismissal below, and any appeal of that dismissal now is clearly waived. Furthermore, an appeal of

A.          Denial of Plaintiff's Motions for Reconsideration

We review a district court's dismissal of a motion for reconsideration for abuse of discretion. Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers, 642 F.3d 87, 91 (1st Cir. 2011). "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). The moving party "must 'either clearly establish a manifest error of law or must present newly discovered evidence.'" Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004)). A motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)) (internal quotation marks omitted).

Plaintiff's principal claim on appeal is that the district court abused its discretion in denying the second motion

---

the dismissal of the § 1962(a) or § 1962(d) RICO claims against BPPR would be untimely under Federal Rule of Appellate Procedure 4(a)(1)(A).

for reconsideration because, while plaintiff agreed to the dismissal of the RICO claims against BPPR, plaintiff never agreed to the dismissal of its RICO claims against the Westernbank employees.

The short answer is that it was reasonable for the district court, after settlement, to have viewed the dismissal order as encompassing all the RICO claims. And plaintiff,[4] when given the opportunity to present a different view, utterly failed to do so.

It was reasonable for the district court to have believed that the RICO claims against BPPR were the only RICO claims in the case. As an initial matter, the district court did not authorize the plaintiff to amend the complaint to add the named Westernbank employees. The plaintiff requested leave only to add new insurance companies to the complaint, and the district court's order limited the scope of plaintiff's amendment to the addition of insurance companies only. Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. Mar. 18, 2011). This intent is reaffirmed in the district court's July 5, 2011, motion dismissing the remaining claims without prejudice. After BPPR objected to the plaintiff's inclusion of new Westernbank employees

---

[4] We do not need to decide whether plaintiff ever had any viable RICO claims against certain Westernbank officers. By its actions, plaintiff has waived any such claims and its eventual protests were too little and too late.

-13-

as parties, the district court clarified that the complaint had been amended only "to include insurance companies, [and that] the causes of action remained the same." Fábrica de Muebles J.J. Álvarez, Inc. v. Westernbank de P.R., No. 09-1558 (D.P.R. July 5, 2011).

Moreover, as to the Westernbank employees, the complaint pleads only the "control or influence" element of a RICO claim. The remainder of the pled RICO claim discusses only the actions of Westernbank and makes no mention of its employees. It is basic law that RICO claims against employees must be separate and distinct from those against the employer. See, e.g., Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 449 (1st Cir. 2000). Without having pled each element of a RICO claim as to the Westernbank employees separate and apart from Westernbank itself, it is not clear that the complaint stated a claim under RICO against the employees or was intended to do so.

Further, no individuals had been named or served as defendants at the time the claims were reported settled. Although the parties were ordered by the court to file a stipulation of settlement, plaintiff failed to cooperate and did nothing. Plaintiff did not assert that it had RICO claims remaining.[5]

---

[5] Nor did plaintiff seek leave, after it had reported the case against the bank settled, to amend the complaint to assert independent RICO claims against employees.

-14-

Nor did the plaintiff clarify post-dismissal, despite several opportunities to do so, that it had intended to assert RICO claims against the Westernbank employees, which were not encompassed by the dismissal. First, the plaintiff failed to respond to the district court's June 28, 2011 order to show cause as to why the remaining claims should not be dismissed for lack of jurisdiction. "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. (citing Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). By remaining silent on the show cause order, plaintiff failed to meet this burden.

Moreover, plaintiff failed to mention any such RICO claims against the Westernbank employees in its first motion to reconsider. Instead, the plaintiff argued only that the court should retain jurisdiction because the case involves settlement agreements arising out of federal bankruptcy proceedings. It was not until the district court denied this first motion that the plaintiff filed a new motion raising, for the first time, the issue of RICO claims against Westernbank employees.

This attempt to resuscitate any RICO claims as to individuals came far too late. A motion for reconsideration is not

a vehicle for the introduction of arguments that could and should have been made to the district court earlier, nor may a party move for reconsideration on the basis of its own procedural failures. See Aybar, 118 F.3d at 16. Accordingly, the district court did not abuse its discretion in denying the plaintiff's second motion for reconsideration.

Nor did the district court abuse its discretion in denying the plaintiff's first motion for reconsideration. There, the plaintiff argued in essence that because Mendoza's June 4, 2008 and December 9, 2008 settlement agreements arose out of the bankruptcy proceedings, they fall within the ambit of bankruptcy law and a federal court is better positioned than a state court to interpret their meaning and scope.

The district court correctly ruled that the mere fact that the settlement agreements arose in the context of a bankruptcy proceeding is not a stand-alone basis for federal jurisdiction. To the contrary, interpreting these agreements and their scope is a matter of state contract law, an area that falls squarely within the traditional competence of state courts. See Citibank Global Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 26-27 (1st Cir. 2009).

B.      Dismissal for Lack of Subject Matter Jurisdiction

Plaintiff argues that the court erred in dismissing the case after the show cause order because its complaint should have

-16-

been read as asserting federal claims beyond the RICO claims.  We review de novo a district court's dismissal for lack of subject matter jurisdiction.  Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012).

Plaintiff argues that the complaint on its face supported several federal causes of action other than under RICO, including under Sarbanes Oxley, 15 U.S.C. § 7219, the Transportation of Stolen Property Act, 18 U.S.C. § 2314, statutes regulating the relationship between the FDIC and the bank, including 12 U.S.C. § 1811,[6] and various other federal securities laws.

The complaint's references to these statutes does not come close to meeting the pleading requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 28 (1st Cir. 2009) (citing Iqbal to affirm dismissal for lack of subject matter jurisdiction where relator failed to adequately plead that he qualified as an original source under the False Claims Act); Rodriquez v. SK & F Co., 833 F.2d 8, 8 (1st Cir. 1987) (per curiam) (affirming dismissal for lack of subject matter jurisdiction where "the plaintiff has failed to allege grounds upon which to support either

---

[6] Plaintiff also argues that the FDIC's status as a party in the case conferred upon the court federal question jurisdiction. This argument is now moot; we have dismissed the appeal as to the FDIC with prejudice pursuant to an agreement between the plaintiff and the FDIC under Federal Rule of Appellate Procedure 42(b).  See Fábrica de Muebles J.J. Álvarez, Inc. v. Inversiones Mendoza, Inc., No. 11-1985 (1st Cir. Dec. 21, 2011).

his conclusory allegation of diversity jurisdiction or federal question jurisdiction"). At most, some of these statutes are briefly mentioned in the complaint; they are simply listed on the second page of the complaint rather than pled as causes of action, and that is insufficient. See Marrero-Rodríguez v. Municipality of San Juan, No. 11-1195, 2012 WL 1571234, at *3 (1st Cir. May 7, 2012) ("Plaintiff's purported Fourth Amendment claim fails to meet the pleading standards of Iqbal [because it] was not even pled as a claim, but only mentioned on the first page of the complaint.") (to be published in F.3d).

## IV.

We affirm the district court's dismissal of the case without prejudice, as well as the district court's denial of plaintiff's two motions for reconsideration.