# United States Court of Appeals
## For the First Circuit

No. 15-1470

UNITED STATES OF AMERICA et al., ex. rel.,
ALLISON KELLY, FRANK GARCIA,

Plaintiffs, Appellants,

v.

NOVARTIS PHARMACEUTICALS CORPORATION; NOVARTIS CORPORATION;
GENENTECH, INC.; and ROCHE HOLDINGS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Timothy Cornell, with whom Cornell Dolan, P.C., was on brief, for appellants.
Elliot R. Peters, with whom Steven A. Hirsch, David J. Silbert, Keker & Van Nest LLP, Matthew J. O'Connor, Ronald G. Dove, Jr., and Covington & Burling LLP, were on brief, for Genentech, Inc. and Roche Holdings, Inc., appellees.
Michael A. Rogoff, with whom Debra E. Schreck, Kaye Scholer LLP, Tracy A. Miner, and Demeo LLP, were on brief, for Novartis Pharmaceuticals Corporation and Novartis Corporation, appellees.

June 17, 2016

**STAHL**, **Circuit Judge**.   Appellants Allison Kelly and Frank Garcia ("Relators") brought qui tam actions against Appellees Genentech, Inc. and Roche Holdings, Inc. ("Genentech") and Novartis Pharmaceuticals Corporation and Novartis Corporation ("Novartis") (collectively, "Defendants") under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and related state statutes.   Relators allege that Defendants caused physicians and healthcare providers to submit false claims to the government for reimbursement for Xolair, an injected drug used to treat allergies.

Because Relators failed to state their complaints with sufficient particularity and the district court did not abuse its discretion in denying Relators leave to amend, we AFFIRM the district court's decision to dismiss the federal claims with prejudice.   After dismissing the federal claims, however, the district court declined to exercise jurisdiction over the state-law claims and then dismissed these claims with prejudice. Because the court erred in dismissing the state-law claims with prejudice, we VACATE this portion of the district court's decision and REMAND with instructions to dismiss Relators' state-law claims without prejudice.

## I.  Facts & Background[1]

Xolair is a drug approved by the FDA for treating moderate-to-severe persistent allergic asthma in patients twelve and older whose symptoms are not adequately controlled with inhaled corticosteroids.  The drug is co-promoted in the United States by Genentech and Novartis.

In 2006, Frank Garcia and Allison Kelly jointly filed a qui tam complaint (the "2006 Garcia Complaint" or "2006 Garcia Action") alleging that defendants had marketed Xolair unlawfully.  Garcia had been a Xolair sales representative for Genentech from 2003 to 2004, and Kelly had been a Xolair sales representative for Novartis from 2003 to 2007.  The 2006 Garcia Complaint alleged that Defendants illegally promoted Xolair for off-label uses,[2] paid kickbacks to doctors,[3] encouraged sales

_____

[1] Because this appeal follows the granting of a motion to dismiss, we recite the facts as they appear in the applicable complaints in this action, including any documents incorporated by reference in those complaints.  Hochendoner v. Genzyme Corp., ___ F.3d ____, 2016 WL 2962148, at *1 (1st Cir. 2016).

[2] Although the FDA only approved Xolair for treating moderate-to-severe persistent allergic asthma in patients twelve and older, it is alleged that pharmaceutical representatives for Novartis and Genentech visited doctors' offices and reported studies that claimed that Xolair was effective on patients with mild asthma, or that it should be used on patients who did not otherwise satisfy the criteria for administration of Xolair.  The representatives supposedly also were encouraged to tell

representatives to improperly complete and influence the completion of Statement of Medical Necessity ("SMN") forms,[4] and targeted Disproportionate Share Hospitals.[5] Based on these allegations, Relators claimed that Defendants violated the FCA and analogous state statutes by causing false claims for Xolair to be presented to government healthcare programs.

In 2010, another Genentech sales representative, Stephen Fauci, filed a complaint similarly alleging that Genentech and Novartis had promoted off-label uses of Xolair (the "2010 Fauci Complaint" or "2010 Fauci Action").

After conducting a four-year investigation, the United States, in January 2011, declined to intervene in the 2006 Garcia Action and the 2010 Fauci Action. The vast majority of

doctors that Xolair could be used for peanut and other allergies that did not involve asthma and could be used on children under the age of twelve.

[3] Novartis and Genentech allegedly treated doctors to free equipment and labor, dined them at fine restaurants, and provided them speakers' fees and luxury trips.

[4] An SMN is a formal prescription for medication that is signed by the prescribing physician.

[5] A Disproportionate Share Hospital is a hospital that serves a significantly disproportionate number of low-income patients and receives payments from the Centers for Medicaid and Medicare Services to cover the costs of providing care to uninsured patients.

- 4 -

the States named as plaintiffs followed the United States' lead and declined as well. So too did counsel for Kelly and Garcia, who withdrew. In light of this apparent unraveling, Kelly asked to be dismissed as a relator from the 2006 Garcia Action and asked that her name remain under seal. The court dismissed Kelly from the action and gave Garcia sixty days to file an amended complaint removing all references to Kelly. Garcia requested several extensions of time to file this complaint as he sought new counsel to carry the action forward.

Then, in June 2012, Kelly returned to the court, now represented by the new counsel for Garcia and Fauci, and filed yet another qui tam complaint under seal (the "2012 Kelly Complaint" or "2012 Kelly Action"). In her new complaint, Kelly built upon the allegations contained in the pending 2006 Garcia and 2010 Fauci Complaints, contending that Defendants illegally promoted Xolair for off-label uses; paid kickbacks to physicians; aided and encouraged doctors to falsify SMNs; targeted and marketed to Disproportionate Share Hospitals; encouraged doctors to "upcode";[6] and failed to provide the best price for Xolair to healthcare providers. Four months later,

_____

[6] "Upcoding" involves using improper billing and coverage codes in order to obtain higher reimbursement rates.

- 5 -

Garcia and Fauci moved to consolidate their actions with the new 2012 Kelly Action and moved for leave to file an amended joint complaint ("Joint Complaint" or "Joint Action"). The court did not rule on the motion to consolidate and amend, and the federal government and several States once again declined to intervene.

In 2013, the district court unsealed the 2012 Kelly Complaint, leaving the 2006 Garcia Action and the 2010 Fauci Action under seal. Finally, in January 2014, Kelly served the 2012 Kelly Complaint on Defendants. That same month, the United States filed a motion to partially lift the seal in the 2006 Garcia and 2010 Fauci Actions, pointing out that the 2012 Kelly Complaint "could be subject to dismissal under the False Claims Act's 'first to file' rule" because it was "based on the same facts underlying the complaints" in the those actions. The court allowed the motion and unsealed, among other documents, the 2006 Garcia Complaint and the 2010 Fauci Complaint.

Relators then attempted to re-file their pending motion to consolidate and amend. In response, the court gave Defendants two weeks to respond to the proposed Joint Complaint. Defendants opposed the Joint Complaint on grounds of futility, undue delay, and prejudice. Genentech and Novartis argued that the 2010 Fauci and 2012 Kelly Actions fell under the first-to-

file bar and noted that the cases had been pending for several years before the Joint Complaint had been filed. The next day, on April 18, 2014, the court entered a short order denying Relators' motion to consolidate and amend.

A few months later, Defendants filed a motion to dismiss the 2006 Garcia Complaint and the 2012 Kelly Complaint.[7] On March 17, 2015, the court granted Defendants' motion, dismissed the federal claims with prejudice, and issued judgment for Defendants. The court held that the 2006 Garcia and 2012 Kelly Complaints failed to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b), and that amendment would be futile. The court also dismissed Relators' pendent state-law claims with prejudice. Relators now appeal.

## II. Analysis

Relators raise three issues on appeal. First, they contend that the district court abused its discretion when it denied their 2014 motion to amend and consolidate by failing to declare its reasoning on the record at the time of the denial. Second, Relators argue that the district court erred in

---

[7] The day before Defendants filed their motion to dismiss, Fauci voluntarily dismissed all claims in the 2010 Fauci Action.

dismissing their federal claims with prejudice. Finally, Relators argue that the court erred in dismissing their state-law claims with prejudice.

A.   Motion to Amend

Relators claim the district court erred in its April 18, 2014 order because it denied their first motion to amend and consolidate without explaining its reasoning on the record. We review the denial of a motion to amend for abuse of discretion. United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 116 (1st Cir. 2010). Here, no such abuse can be found.

Although the court could, and perhaps should, have foreclosed this basis for appeal through a short recitation of its reasoning, this omission alone is not a basis for reversal. As the Supreme Court held in Foman v. Davis:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the

> denial is not an exercise of discretion; it
> is merely abuse of that discretion . . . .

371 U.S. 178, 182 (1962) (emphasis added).  The court's basis for decision need not be declared if its reasons are apparent from the record.  United States ex rel. Wilson v. Bristol-Myers Squibb, Inc., 750 F.3d 111, 119 (1st Cir. 2014) ("We 'defer to the district court's hands-on judgment so long as the record evinces an adequate reason for the denial.'" (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006))); ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (noting that "the district court enjoys significant latitude in deciding whether to grant leave to amend" and that we will "defer to the district court's decision 'if any adequate reason for the denial is apparent on the record'" (quoting LaRocca v. Borden, Inc., 276 F.3d 22, 32 n.9 (1st Cir. 2002))).

Here, the court's decision immediately followed Defendants' opposition memorandum, which set out adequate bases for denial: undue delay and futility.  As Defendants pointed out in that memorandum, Relators "offer[ed] no valid reason" for "withholding for at least five years the 'additional details' they s[ought] to include in their amended complaint."  See Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390–91 (1st Cir.

- 9 -

2013) ("[W]hen 'a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay.'" (quoting Hayes v. New Eng. Millwork Distribs., Inc., 602 F.2d 15, 19–20 (1st Cir. 1979))); Edlow v. RBW, LLC, 688 F.3d 26, 40 (1st Cir. 2012) (affirming denial when "the factual predicates on which the proposed amended complaint is based are the same as those in the original complaint and were known to [plaintiff] before he filed suit").

Relators' proposed amendment also was futile because any attempt to consolidate the 2010 Fauci Action and 2012 Kelly Action with the still-pending 2006 Garcia Action would be little more than an attempt to circumvent the FCA's first-to-file bar. See 31 U.S.C. § 3730(b)(5) ("When a person brings an [FCA qui tam action on the government's behalf], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.").[8] The district court would later (erroneously) reject Defendants' first-to-file argument with respect to the 2012 Kelly Action due to her

_____

[8] Relators sought more than the routine consolidation of independent actions for pre-trial proceedings and administrative purposes; Relators sought to merge three distinct actions into one single proceeding operating under one single complaint.

original involvement in the 2006 Garcia Action. However, at the time of the initial motion to consolidate and amend, Relators sought to incorporate the 2010 Fauci Action as well. This merger of cases would have been an obvious violation of the first-to-file rule. Thus, the reasons for the court's 2014 decision were readily apparent from the record, and the court's denial of Relators' motion was not an abuse of discretion.

### B. Relators' Federal-Law Claims

Relators next contend the court erred in its March 17, 2015 order when it dismissed the FCA claims in the 2006 Garcia and 2012 Kelly Actions and, again, denied leave to amend. We review the granting of a motion to dismiss de novo, Buntin v. City of Bos., 813 F.3d 401, 404 (1st Cir. 2015), "accepting as true all well-pleaded facts, analyzing those facts in the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff," United States ex rel. Hutcheson v. Blackstone Med. Inc., 647 F.3d 377, 383 (1st Cir. 2011). In its decision, the district court rejected Defendants' argument that the 2012 Kelly Complaint should be dismissed under the first-to-file bar. Instead, the court dismissed the federal claims in both the 2006 Garcia and 2012 Kelly Actions based on

their failure to plead the alleged fraud with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).

### i.    First to File

We first examine Defendants' contention that the district court should have dismissed the 2012 Kelly Action based on the first-to-file rule.  This rule bars a later-filed "related action," 31 U.S.C. § 3730(b)(5), that alleges "all the essential facts" or "the same elements of a fraud described" in an earlier-filed complaint while that complaint is still pending, Wilson, 750 F.3d at 117.

In this case, all of the parties agreed, and the court found, that the two suits involved "the same basic facts and issues" and were "virtually identical to each other."  United States ex rel. Garcia v. Novartis AG, 91 F. Supp. 3d 87, 99 (D. Mass. 2015).  Yet, the court held that the first-to-file rule "ought not bar the exercise of jurisdiction over the [2012 Kelly Action] in this particular case" because "Kelly and Garcia co-filed the Garcia Complaint."  Id.

In so holding, the district court erred.  Neither the text nor the purpose of the statute permit such an exception. The stark "no person" language of the rule is plainly stated and "exception-free."  Wilson, 750 F.3d at 117; see also United

States ex rel. Duxbury v. Ortho Biotech Prods., L.P. (Duxbury), 579 F.3d 13, 16, 32-33 (1st Cir. 2009). The resulting bar furthers the FCA's goal of avoiding piecemeal and duplicative ligation that does not advance the government's investigation of alleged fraud. Once the government has "sufficient notice to launch [an] investigation[,] . . . [a] later-filed complaint that mirrors the essential facts as the pending earlier-filed complaint does nothing to help reduce fraud of which the government is already aware." United States ex rel. Heineman-Guta v. Guidant Corp., 718 F.3d 28, 35-36 (1st Cir. 2013).

It is true that Kelly was not the prototypical "opportunistic" or "parasitic" plaintiff, Novartis, 91 F. Supp. 3d at 99; however, Kelly cannot escape the fact that she voluntarily requested dismissal without prejudice from the 2006 Garcia Action. "'Without prejudice' does not mean 'without consequence.'" Powell v. Starwalt, 866 F.2d 964, 966 (7th Cir. 1989). Nothing about her prior involvement in the 2006 Garcia Action could serve to dissolve the independent statutory bar to her bringing a new, and essentially identical, action in 2012. See United States ex rel. Shea v. Cellco P'ship, 748 F.3d 338, 342-43 (D.C. Cir. 2014), cert. granted, judgment vacated on other grounds, 135 S. Ct. 2376 (2015) (holding that "[n]o rule

- 13 -

of grammar, logic, or the law compels" a reading "that the first-to-file bar applies only to litigants other than the relator who filed the original action"); United States ex rel. Moore v. Pennrose Props., LLC, No. 3:11-cv-121, 2015 WL 1358034, at *15 (S.D. Ohio Mar. 24, 2015) (finding that a relator's status as an earlier filer did not prevent the first-to-file rule from barring his subsequent complaint); United States ex rel. Syzmoniak v. ACE Sec. Corp., C/A No. 0:13-cv-00464-JFA, 2014 WL 1910876, at *1-2, *4-6 (D.S.C. May 12, 2014) (dismissing second qui tam suit on first-to-file grounds even though same relator had filed earlier suit and second suit named additional defendants); United States ex rel. Smith v. Yale-New Haven Hosp., Inc., 411 F. Supp. 2d 64, 75-76 (D. Conn. 2005) (dismissing second qui tam complaint filed by the same relator on first-to-file grounds because the bar applies "equally to the original relator as any other person").

Although Relators argue that Kelly "brought her claims with her" when she left the 2006 Garcia Action, this is little more than a thin fiction. When Kelly was dismissed from the 2006 Garcia Action, the court only ordered that Garcia file an amended complaint and "remov[e] all references to Relator Allison Kelly"; an order which, in any event, was not followed.

- 14 -

Kelly may have left the 2006 Garcia Action, but the essential allegations remained behind.

For these reasons, the 2012 Kelly Complaint should have been dismissed under the first-to-file bar. This does not, however, end our inquiry. Complaints dismissed under the first-to-file bar are usually dismissed without prejudice. See United States ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 3 (1st Cir. 2015) ("[T]he dismissal of a section 3730(b)(5) claim ordinarily should be without prejudice, because the claim could be refiled once the first-filed action is no longer pending.").

Yet, this case presents a procedural wrinkle. If the court properly dismissed the 2006 Garcia Complaint based on its failure to allege fraud with sufficient particularity, then the presently "pending" case would drop out and the first-to-file bar on the 2012 Kelly Complaint might be lifted. See id. at 6. In such circumstances, Kelly could conceivably supplement or re-file her complaint. See id. at 7-8.

In this case, however, remanding would be a wasteful formality. Even if the district court were to find on remand that it now had jurisdiction, that court has already held that the 2012 Kelly Complaint is insufficiently particularized to offset a Rule 9(b) challenge. Because we would send the action

- 15 -

back to a fate certain and the merits of the district court's particularity decision are undoubtedly correct, we will spare the litigants a costly and unnecessary round trip and address the district court's particularity decisions with respect to both complaints now.[9]  Cf. Bullard v. Hyde Park Sav. Bank (In re Bullard), 752 F.3d 483, 485 n.1 (1st Cir. 2014), aff'd sub nom. Bullard v. Blue Hills Bank, 135 S. Ct. 1686 (2015).

ii.  Particularity

The district court held that neither the 2006 Garcia Complaint nor the 2012 Kelly Complaint pled fraud with sufficient particularity to survive the demands of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the

---

[9] We assume, but need not decide, that the first-to-file bar remains jurisdictional.  This position is not without doubt. See Gadbois, 809 F.3d at 6 n.2 ("[W]e have no need to consider the relator's back-up argument that the first-to-file bar is not jurisdictional in light of [Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, 135 S. Ct. 1970 (2015)].").  Even if the first-to-file bar were non-jurisdictional, however, we would still be faced with a question of particularity and futility.  See United States ex rel. Shea v. Verizon Commc'ns, Inc., No. 09-1050(GK), 2015 WL 7769624, at *11 (D.D.C. Oct. 6, 2015) ("The Court has already concluded that Plaintiff's action must be dismissed without prejudice under § 3730(b)(5). . . . Accordingly, the only question the Court must consider is whether dismissal with prejudice under Rules 8 and 9(b) is warranted.").

circumstances constituting fraud or mistake." The particularity requirement means that a complaint must specify "the time, place, and content of an alleged false representation." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (quoting McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980)). Conclusory allegations and references to "plans and schemes" are not sufficient. Id. (quoting Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985)).

Where, as here, it is alleged that the defendant caused a third party to submit a claim to the government, then the First Circuit applies a somewhat "more flexible" standard, allowing a relator to satisfy Rule 9(b) by providing "factual or statistical evidence to strengthen the inference of fraud beyond possibility without necessarily providing details as to each false claim" submitted. Duxbury, 579 F.3d at 29-30 (citations and internal quotation marks omitted). However, "it is the fraud itself which must be pled with particularity, not just who benefits from the fraud and what pot of federal money may be the object of the fraud." United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 47 (1st Cir. 2009).

In other words, it is not enough simply to "rais[e] facts that suggest fraud was possible . . . [because, for

example, it] may well be that [those] doctors who prescribed [the drug] for off-label uses as a result of [the] illegal marketing of the drug withstood the temptation and did not seek federal reimbursement, and neither did their patients." United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733 (1st Cir. 2007), overruled in part by Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008). Because "[i]t may be that physicians prescribed [the drug] for off-label uses only where the patients paid for it themselves or when the patients' private insurers paid for it," id., the evidence necessary to "strengthen the inference of fraud beyond possibility," id., generally requires the relator to plead, inter alia, "specific medical providers who allegedly submitted false claims," the "rough time periods, locations, and amounts of the claims," and "the specific government programs to which the claims were made." United States ex rel. Ge v. Takeda Pharm. Co., Ltd., 737 F.3d 116, 121, 124 (1st Cir. 2013). Merely alleging that a scheme was wide-ranging--and, therefore, that a fraudulent claim was presumably submitted--will not suffice.

Nor is evidence of illegal conduct alone sufficient to state an FCA claim. See Rost, 507 F.3d at 732. FCA liability attaches to a "false or fraudulent claim for payment or

- 18 -

approval" or to a "false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). "FCA liability does not attach to violations of federal law or regulations, such as marketing of drugs in violation of the [Food, Drug & Cosmetic Act, 21 U.S.C. § 321 et seq.], that are independent of any false claim." Rost, 507 F.3d at 727.

Rather, the complaint must identify the alleged fraud with a significant degree of specificity. In Duxbury, for example, the relator alleged that, through a company's illegal kickbacks, false claims to Medicare were filed by medical providers for reimbursement of drug purchases. 579 F.3d at 29.

> Duxbury set[] forth allegations of kickbacks provided by [the company] that resulted in the submission of false claims by eight [named] healthcare providers in the Western United States . . . . As to each, Duxbury provide[d] information as to the dates and amounts of the false claims filed by these providers with the Medicare program.

Id. at 30. Although the Duxbury court said the case was "a close call," it found that the relator's claims satisfied Rule 9(b) because he alleged the "who, what, where, and when of the allegedly false or fraudulent representation." Id. (quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004)). "In particular, Duxbury ha[d] identified, as to each of

- 19 -

the eight medical providers (the who), the illegal kickbacks (the what), the rough time periods and locations (the where and when), and the filing of the false claims themselves." Id.

Similarly, in United States ex rel. Westmoreland v. Amgen, Inc., the complaint "contain[ed] allegations regarding particular medical providers who submitted legally and factually false claims at the Defendants' encouragement."  738 F. Supp. 2d 267, 276 (D. Mass. 2010).  In particular:

> Relator pleads that the Defendants advised doctors at Balboa Nephrology . . . to capture all overfill profit, which led Balboa to issue a standing order for doctors to write Aranesp orders for an amount that was 10% more than the standard dosage that otherwise would have been administered for **every** patient, and a standing order that Medical Assistants were to administer as much Aranesp in the vial as possible.
>
> Relator also alleges that California Kidney Group . . . billed Aranesp 15% over the labeled dosage even though it is not actually possible to withdraw 15% overfill from a single dose vial, and sought reimbursement for dosages of Aranesp above the amount intended to be administered to the patient.

Id. at 276-77 (citations omitted).  In short, the defendants "knew that their actions 'would, if successful, result in the submission by [providers] of compliance certifications required by Medicare that [the defendants] knew would be false.'"  Id. at

277-78 (alterations in original) (quoting United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 244 (3d Cir. 2004)).

When one compares the allegations made in the 2006 Garcia Complaint and the 2012 Kelly Complaint to the allegations made in Duxbury and Westmoreland, it becomes clear that the pleadings here do not meet the requisite level of specificity. In fact, the allegations in Duxbury, which outstrip those found here, were only "barely adequate." See Ge, 737 F.3d at 124. The closest Relators get to positing the existence of fraud is to allege that certain doctors, at various points, (1) were enrolled in federal reimbursement programs, (2) received services and incentives from Defendants, and (3) prescribed Xolair. Relators failed, however, to tie these independently unexceptional allegations together into particularized charges about specific fraudulent claims for payment. With respect to the 2012 Kelly Complaint, for example, the district court found that Kelly pleaded "no evidence of any false statement, SMN form, or claim that effectively was submitted," "identif[ied] no claims for reimbursement to Medicare, Medicaid, or any other federal health care program," and "fail[ed] to provide even a single example of fraudulent conduct resulting in reimbursement of Xolair by a federal health care program[.]" Novartis, 91

F. Supp. 3d at 109. The district court found that Kelly, like Garcia, had not "provid[ed] reliable indicia that the alleged underlying schemes resulted in submission of false claims," nor had she "br[ought] forward evidence that the physicians who prescribed Xolair sought federal reimbursement." Id.

Of course, it may not be "irrational to infer that, given [the allegations], some false claims for [Xolair] reimbursement were submitted to the government." Rost, 507 F.3d at 732. But this is not enough to satisfy Rule 9(b). Relators' allegations "g[i]ve rise to only speculation as to whether the alleged scheme caused the filing of false claims with the government." Duxbury, 579 F.3d at 31. Because Relators' evidence and arguments proceed more by insinuation than any "factual or statistical evidence [that would] strengthen the inference of fraud beyond possibility," Rost, 507 F.3d at 733, the district court properly dismissed Relators' federal claims.

The court's further decision to dismiss the federal claims with prejudice likewise cannot be faulted. Relators had repeatedly failed to cure the deficiencies in their complaints, and the proposed Joint Complaint promised more of the same. Although the Joint Complaint added extra grist for speculation, it offered nothing new of substance to cure the inferential gaps

found in Relators' prior complaints.  We need hardly rely upon the abuse-of-discretion standard to affirm the district court's decision to dismiss the federal claims with prejudice.

C.   Relators' State-Law Claims

Finally, Relators claim that the district court erred when it dismissed their pendant state-law claims with prejudice. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims."   Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).   However, "this praxis is not compelled by a lack of judicial power. . . . In an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims."   Id.

Relators alleged violations of a number of state false claims acts.   In its decision, the district court dismissed the federal-law claims but declined "to exercise supplemental jurisdiction over the state law claims."   Novartis, 91 F. Supp. 3d at 112.   The court recognized that, when federal claims are dismissed at such an early stage, "any supplemental state-law claims" should be dismissed without prejudice.   Id. (quoting

- 23 -

Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007)). Consequently, the court stated that "Relators' claims for relief under the individual states' qui tam statutes are dismissed, albeit without prejudice." Id. (emphasis added).

In its conclusion, however, the district court inexplicably reversed course and dismissed Relators' state-law claims with prejudice. Id. Relators filed a Request for Clarification, and the Court responded, without further explanation, that it had intended to dismiss the state-law claims with prejudice as well.

Defendants contend that the court dismissed the state-law claims for the same reason it dismissed the federal-law claims: failure to plead fraud with particularity. The court's conclusion to its opinion reflects this reading: "[T]he claims alleged in Garcia's and Kelly's complaints, pursuant to . . . the individual states' equivalent qui tam provisions, lack the particularity required under Rule 9(b) for pleading fraud." Id.

But this conclusion simply cannot be reconciled with the court's earlier decision in its opinion declining jurisdiction over the state-law claims. A court cannot dismiss a claim on the merits if it has declined to exercise jurisdiction over the claim at all. That is not to say that the

court would have lacked the power to dismiss the claims with prejudice if it had retained jurisdiction. See Rodriguez, 57 F.3d at 1177. But here the court declined jurisdiction and then purported to dismiss the claims with prejudice. That does not wash.

Because the district court expressly relinquished jurisdiction over Relators' state-law claims, we think it appropriate to vacate the district court's decision to dismiss the state-law claims with prejudice and remand so that the court may dismiss the state-law claims without prejudice.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Relators' federal-law claims with prejudice, and we VACATE the district court's decision to dismiss Relators' state-law claims with prejudice. On REMAND, the district court is instructed to dismiss Relators' state-law claims without prejudice.