# United States Court of Appeals
## For the First Circuit

No. 25-1309

UNITED STATES OF AMERICA, ex rel. REYNALDO SOLANO AND NEALS
MAXILIN; STATE OF CALIFORNIA, STATE OF FLORIDA, STATE OF
ILLINOIS, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN,
STATE OF NEW JERSEY, STATE OF NEW YORK, STATE OF TEXAS, ex rel.
REYNALDO SOLANO AND NEALS MAXILIN,

Plaintiffs, Appellants,

v.

BARTON ASSOCIATES, INC.,

Defendant, Appellee,

MEDTECH WORLDWIDE, INC.; REALTIME PHYSICIANS, LLC; OCENTURE,
LLC; CARELUMINA, LLC,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Rikelman, Circuit Judges.

Christopher Furlong, with whom Frier Levitt was on brief, for
appellants.
Jordan Bock, with whom Kevin Martin, Miranda Hooker, and
Goodwin Procter LLP were on brief, for appellee.

May 28, 2026

**RIKELMAN, <u>Circuit Judge</u>**. This case is a qui tam action under the False Claims Act (FCA). <u>See</u> 31 U.S.C. §§ 3729-3733. In 2022, Reynaldo Solano and Neals Maxilin sued Barton Associates, Inc., claiming that Barton ran a fraudulent scheme to induce others to submit false claims to Medicare and other government benefit programs in exchange for a fee. The district court granted Barton's motion to dismiss, concluding that Solano and Maxilin had failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). They now appeal the dismissal, as well as the district court's decision to deny their request for reconsideration or, in the alternative, to amend their complaint. Discerning no legal error or abuse of discretion in the district court's rulings, we affirm.

## I. BACKGROUND

### A. Relevant Facts

Solano owns a company that specializes in repairs and installations of mobility and accessibility devices, such as wheelchair lifts and scooters.[1] In 2019, he received an unsolicited phone call from an account manager at Barton. Barton operates a staffing agency that assigns medical professionals to "locum tenens," or temporary, positions at hospitals and other

---

[1] Because the district court dismissed the case at the pleading stage, we draw the facts from the complaint. <u>See</u> <u>United States ex rel. Duxbury</u> v. <u>Ortho Biotech Prods., L.P.</u>, 579 F.3d 13, 20 (1st Cir. 2009).

- 3 -

medical entities across the United States.  Solano alleges that the Barton employee sought to recruit him into Barton's "scheme" to "defraud Medicare and other government funded health plans."

According to Solano, the Barton employee outlined the scheme over "several conversations."  The employee explained that Barton recruits individuals or medical organizations ("clients") that provide medical services or products and can access the contact information of patients eligible for Medicare or other government programs.  Barton then "encourages" its clients to create a call center to solicit requests for medical treatment from those patients.  If a patient seeks a medical service or product, the client would then connect the patient with Barton, which would assign the patient to one of its own physicians to prescribe the service or product.  Solano alleges that, on top of what the patient pays for the physician consultation, Barton collects an additional $40 "assessment fee" from the client for each prescription its physicians write, and the client then submits a claim to the government for providing the service or product to the patient.

In one phone call, the Barton employee told Solano that, although a Barton physician must review each patient request for a service or product and "be allowed to reject" it, in fact, "99.9% of the submitted requests are approved."  Solano never participated

in the scheme, but the Barton employee claimed that Barton had several clients already engaged in this ongoing operation.

Meanwhile, Maxilin worked as a certified coding associate for Medtech Worldwide, Inc., which operates a network of virtual medical clinics pairing patients with providers for consultations. His role involved coding prescriptions for cancer tests, pain creams, and medical equipment.

According to Maxilin, Medtech was one of Barton's recruited clients that participated in the fraudulent scheme by channeling its patients to Barton physicians to write "unnecessary" prescriptions. He alleges that Medtech and another medical organization, RealTime Physicians, LLC, were obtaining "tens of thousands" of dollars in prescriptions from Barton physicians every month for various testing, equipment, or medications requested by Medicare-eligible patients. The organizations would then seek reimbursement from the federal government for providing the prescribed service or product.[2] Maxilin avers that Barton also contracted with other medical teams, such as Ocenture, LLC and CareLumina, LLC, which "were paying patients to take . . . cancer screening test[s] and then billing Medicare . . . for reimbursement." Ocenture and CareLumina

---

[2] Maxilin alleges that Medtech also falsified signatures and forms, among other misconduct. Because Barton is not implicated in these additional allegations, we do not discuss them further.

allegedly performed between "8,000 and 10,000 cancer-screening tests per month."[3]

## B. Procedural History

In June 2020, Solano and Maxilin brought a sealed qui tam action under the FCA and the analogous statutes of eight states. In a qui tam suit, whistleblowers (called "relators") purport to bring claims on behalf of the United States. See 31 U.S.C. § 3730(b)(1).

Here, Solano and Maxilin alleged five claims under the FCA, including the presentation of false claims and conspiracy to commit an FCA violation. See id. § 3729(a)(1)(A)-(G). Overall, they alleged that Barton

> knowingly provid[ed] or contract[ed] with providers to furnish medical services to patients eligible for Medicare or other government-funded health plans for unnecessary services prescribed by physicians that did not engage in treatment of the patients, had no physician-patient relationship with them, and often did not even speak with the patients for whom they prescribed the services.

Thus, they claimed that Barton engaged in fraud.

As required by the FCA, Solano and Maxilin submitted a disclosure statement to the local United States Attorney's Office when they filed their complaint. See id. § 3730(b)(2). Three

---

[3] Solano and Maxilin initially sued Medtech, RealTime, Ocenture, and CareLumina, as well as Barton. Only Barton is a party to this appeal.

years later, in May 2023, the United States declined to intervene, and the district court ordered the complaint unsealed and served on Barton.

A few months after the complaint was unsealed, Barton moved to dismiss. It argued, in part, that Solano and Maxilin had failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

The district court granted Barton's motion to dismiss. See United States ex rel. Solano v. Barton & Assocs., Inc., No. 20-11231-GAO, 2024 WL 1346532, at *4 (D. Mass. Mar. 29, 2024). It ruled that Solano and Maxilin had alleged the scheme at "too high a level of generality" to satisfy the requirements of Rule 9(b). Id. at *3. The court went on to hold that, "[b]eyond a general outline of a fraudulent scheme, the complaint is minimal as to any details about specific false claims and lacks reliable indicia that lead to a strong inference that claims were actually submitted." Id. It pointed out that Solano and Maxilin did not include details of the "time periods, locations, or amounts of fraudulently submitted claims" and also failed to identify the "specific government programs" involved in any false claims. Id. The court acknowledged Solano and Maxilin's effort to allege "some numerical totals as to dollars and the number of prescriptions," but it concluded that this information did not "connect . . . with the submission of any false claims to government programs." Id.

As the court explained, they did not allege that these prescriptions were "written without a doctor-patient relationship," were "medically unnecessary," or that the patients were actually enrolled in (rather than just eligible for) Medicare. Id.

In sum, the district court concluded that although the facts alleged by Solano and Maxilin could give rise to "speculation" of fraud by Barton, they were insufficient to "strengthen the inference of fraud beyond possibility." Id. (first quoting United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 31 (1st Cir. 2009); and then quoting Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 31 (1st Cir. 2016)). It thus dismissed both the federal and state-law claims with prejudice for failing to meet the demands of Rule 9(b).

Less than one month after the district court entered its dismissal order, thus ending the case, Solano and Maxilin filed a motion for reconsideration. See Fed. R. Civ. P. 59(e). In their motion, they also requested, in the alternative, that the court treat the dismissal as without prejudice and grant them leave to amend the complaint. See Fed. R. Civ. P. 15(a)(2). The district court denied the motion in full.

Solano and Maxilin timely appealed.

## II. STANDARD OF REVIEW

We review de novo a district court's decision to grant a motion to dismiss for failure to plead fraud with the particularity required by Rule 9(b).  See United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 123 (1st Cir. 2013).  By contrast, we review a district court's denial of a motion to amend a complaint for abuse of discretion.  See United States ex rel. Kelly v. Novartis Pharms. Corp., 827 F.3d 5, 10 (1st Cir. 2016).  We may affirm if any adequate reason for the denial is apparent from the record.  See Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 51 (1st Cir. 1998).  Finally, we review a denial of a motion for reconsideration under Rule 59(e) for manifest abuse of discretion.  See Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 81 (1st Cir. 2008).  District courts have "substantial discretion and broad authority" in resolving a Rule 59(e) motion. Id.

## III. DISCUSSION

Solano and Maxilin argue that the district court erred by not applying the "more flexible" pleading standard for inducement-based FCA claims, and that their complaint against Barton survives under that standard.  Duxbury, 579 F.3d at 30. They also contend that the court abused its discretion in denying their motion for reconsideration and, alternatively, for leave to

- 9 -

amend their complaint.  As we explain, we find no legal error or abuse of discretion in the district court's rulings.

## A. Motion to Dismiss

Solano and Maxilin argue that their complaint "set[] forth a detailed account of a fraudulent scheme" by Barton that "include[d] reliable indicia that [false] claims were submitted" and thus satisfied Rule 9(b).  We disagree that they have met Rule 9(b)'s requirements.

A party bringing a fraud claim under the FCA must show that (1) the defendant submitted or caused the submission of a claim for payment to the government and (2) the claim was false or fraudulent.  See Ge, 737 F.3d at 124; 31 U.S.C. § 3729(a)(1).  Under Rule 9(b), both components must be alleged with particularity.  See Lawton ex rel. United States v. Takeda Pharm. Co., 842 F.3d 125, 130 (1st Cir. 2016) ("Rule 9(b) requires both that the circumstances of the alleged fraud and the claims themselves be alleged with particularity.").  That means alleging the "who, what, when, where, and how of the alleged fraud." Ge, 737 F.3d at 123 (citation modified).  Allegations of misconduct not linked to submission of false claims are "not enough." Id. at 124.

Generally, a complaint brought under the FCA must "identify particular false claims" that the defendant has submitted. Duxbury, 579 F.3d at 29 (emphasis omitted).  But we

have recognized "a distinction between" qui tam actions alleging that the defendant submitted false claims and those alleging that the defendant induced others to file false claims.  Id.

For inducement cases under the FCA, relators may survive a motion to dismiss "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  Id. (quoting United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).  Such reliable indicia may include the "specific medical providers who allegedly submitted false claims, . . . rough time periods, locations, and amounts of the claims, and the specific government programs to which the claims were made."  Ge, 737 F.3d at 124 (discussing Duxbury, 579 F.3d at 30).  We have described this path as a "somewhat more flexible standard" under Rule 9(b).  Hagerty, 844 F.3d at 31 (citation modified) (quoting Kelly, 827 F.3d at 13).  But, in the end, to overcome the Rule 9(b) hurdle, relators must include allegations that "strengthen the inference of fraud beyond possibility." Duxbury, 579 F.3d at 29 (emphasis added) (citation modified).

Solano and Maxilin argue that their complaint "easily satisfies" the "more flexible standard" for inducement-based FCA claims.  In their view, their allegations "include[] multiple reliable indicators that Barton's scheme led directly to the submission of large numbers of false claims."  They point out that

the allegations identify the "specific government programs (e.g., Medicare), the types of items and services reimbursed (genetic tests, [durable medical equipment], pain creams), the nature of the falsity (no patient contact, lack of medical necessity), and the mechanism of causation (prescriptions rubberstamped by Barton's providers and used to submit claims)." Thus, they contend, the district court "misappli[ed]" the legal standard for inducement-based FCA claims, instead "requir[ing] them to identify specific false claims submitted for payment."

To begin, we disagree that the district court "misappli[ed]" the relevant legal standard. The court correctly determined that Solano and Maxilin "alleg[ed] inducement" such that their claims against Barton were subject to the "more accommodating standard" under Duxbury, meaning that they did not need to "provid[e] details as to each false claim." Solano, 2024 WL 1346532, at *2 (citation modified). It also recognized that "there is no checklist of mandatory requirements that each allegation in a complaint must meet to satisfy Rule 9(b)." Id. (citation modified). As the court pointed out, for inducement cases, a complaint can meet the requirements of Rule 9(b) if it contains "reliable indicia that lead to a strong inference that [false] claims were actually submitted." Id. (quoting Duxbury, 579 F.3d at 29). It then highlighted that "factual or statistical evidence" can amount to reliable indicia but stressed that the

- 12 -

alleged facts must "strengthen the inference of fraud beyond possibility." Id. (quoting Hagerty, 844 F.3d at 31). The court went on to conclude that Solano and Maxilin failed to satisfy this more flexible standard. Based on our review, the district court checked all the boxes of the applicable legal test, contrary to Solano and Maxilin's arguments.

Solano and Maxilin insist that their claims survive under the Duxbury standard, but we are not persuaded. To be sure, in Duxbury, we determined that the complaint satisfied the "more flexible standard" for an inducement-based kickback scheme for a drug manufacturer. 579 F.3d at 30. In doing so, however, we pointed out that the complaint identified the who (eight named healthcare providers), the what (illegal kickbacks from defendant's promotion of use of the drug, Procrit), and roughly the where and when (from 1992 to 1998 in the Western United States). See id. at 29-30. And, importantly, the Duxbury complaint provided "specifics" and "information as to the dates and amounts of the false claims filed by these providers with the Medicare program." Id. at 30. For instance, the relators in Duxbury alleged that "[i]n 1997-98 Western Washington Treatment Center in Olympia, Washington received more than $5,000 of free . . . Procrit from [the defendant] under the direction of Robert Ashe so that Western Washington could submit the free product for reimbursement to Medicare." Id. Finally, we noted

that they "alleged facts that false claims were in fact filed" with government programs. Id. at 31. Thus -- "[a]lthough a close call" -- we held that the Duxbury complaint met Rule 9(b)'s requirements. Id. at 30.

By contrast, we concluded that the complaint in Kelly failed under Rule 9(b). See 827 F.3d at 7. The relators in Kelly alleged a similar scheme to the one alleged in Duxbury: they asserted that certain physicians received kickbacks from defendants in exchange for selling and submitting claims for off-label prescriptions of the drug Xolair. See id. at 8. The Kelly relators sought to provide reliable indicia of fraud by specifying dates on which a defendant treated physicians to "upscale meals and drinks" as kickbacks, and the complaint referenced emails describing how the defendants "pushed for Xolair sales." United States ex rel. Garcia v. Novartis AG, 91 F. Supp. 3d 87, 108 (D. Mass. 2015) (citing Kelly Compl. ¶¶ 257-63). The allegations even referenced a slide presentation reflecting the defendants' "efforts to maximize billing of Medicare patients," as well as an FDA report describing the "widespread off-label use of Xolair." Id. (citing Kelly Compl. ¶¶ 13, 267).

Despite the allegations of misconduct, we affirmed the district court's ruling that the Kelly complaint was insufficient to raise an "inference of fraud beyond possibility." 827 F.3d at 15 (citation modified). Fatally, the complaint "had not provided

- 14 -

reliable indicia that the alleged underlying schemes resulted in submission of false claims, nor had [it] brought forward evidence that the physicians who prescribed Xolair sought federal reimbursement." Id. (citation modified). Instead, the "closest Relators g[ot] to positing the existence of fraud" was alleging that "certain doctors" who were "enrolled in federal reimbursement programs" "prescribed Xolair" and "received services and incentives" from the defendants. Id. And although we acknowledged that it would "not be irrational to infer" from these allegations that some false claims were submitted to federal government programs, the complaint "g[a]ve rise to only speculation" and therefore was "not enough to satisfy Rule 9(b)." Id. (citation modified).

The complaint here suffers from the same flaws as did the Kelly complaint. Solano and Maxilin allege that, in 2019, Barton induced four third-party clients to refer patients to Barton physicians to review and approve requests for a variety of medical services and products. The alleged facts -- at most -- identify the "who" and the "when." Just like in Kelly, however, the "what" of the FCA claim -- meaning, indicia of the actual submission of false claims to federal benefit programs -- is missing.

Solano and Maxilin point to facts in their complaint that they argue provide "reliable indicia that false claims were actually submitted." But those facts amount to a handful of

- 15 -

statistics, some unsupported, and one example.  As for the statistics, they assert that two companies -- Medtech and RealTime -- obtained "tens of thousands of dollars in prescriptions every month for genetic testing, durable medical equipment, and pain cream prescriptions."  And they allege that two other companies -- Ocenture and CareLumina -- "perform[ed] between 8,000 and 10,000 cancer-screening tests per month."  Finally, they point to the Barton employee boasting that "99.9%" of the prescription requests submitted to Barton were approved.  As for the example, they claim that a Barton physician signed a prescription for a patient on January 10, 2019, without ever meeting that patient.

Even if we were to infer from these allegations that Barton physicians issued some medically unnecessary prescriptions to patients, Solano and Maxilin still fail to allege that those particular patients, including the patient who met with a Barton physician in January 2019, were enrolled in Medicare or another government program.  Instead, the complaint only describes the patients that Barton served as "Medicare eligible."  This leaves a gap in the allegations about whether any false claims were submitted for payment to the government.  We have held relators' allegations to be insufficient on this score if they fail to provide facts beyond insinuation "that the patients were actually covered by government programs."  Hagerty, 844 F.3d at 33

- 16 -

(affirming dismissal of FCA claims given the relators "d[id] not allege that any particular patient was actually covered by a government program").

Solano and Maxilin's complaint cannot overcome this pleading gap, even under the "more flexible standard" for inducement-based FCA claims. Thus, we affirm the district court's dismissal of their complaint under Rule 9(b).

## B. Motion to Amend and Motion for Reconsideration

According to Solano and Maxilin, the district court abused its discretion by denying, without explanation, their motion to reconsider the dismissal order or, alternatively, for leave to amend their complaint. This argument faces strong headwinds.

## 1. Motion to Amend

Solano and Maxilin argue that the district court should have granted their motion for leave to amend the complaint under the liberal standard of Federal Rule of Civil Procedure 15(a)(2). And they are correct that, generally, courts should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But the timing of the request matters: only when "a motion to amend is properly made before entry of judgment" does

this "liberal standard" apply. Ge, 737 F.3d at 127 (citation modified) (second emphasis added).

Here, Solano and Maxilin never properly moved to amend. Before the district court entered its judgment, their only hint of a potential amendment was during the hearing on Barton's motion to dismiss. At the end of that hearing, they stated: "[I]n the event that this [c]ourt does not find our arguments persuasive or that it otherwise deem[s] it necessary to dismiss parts of the complaint, we respectfully ask leave to amend the complaint and cure any defects this court deems it to have." But such a "passing request for contingent leave to file an amended complaint," especially when made as a part of an "opposition to a motion to dismiss, is insufficient" to make a proper Rule 15(a) motion. Fisher v. Kadant, Inc., 589 F.3d 505, 510-11 (1st Cir. 2009).

Only after the district court dismissed their complaint with prejudice did Solano and Maxilin move for leave to amend their complaint -- and they did so within their motion for reconsideration. We have consistently affirmed a district court's denial of leave to amend when the request has been made post-judgment. See, e.g., Ge, 737 F.3d at 127-28 (explaining that a "district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set aside or vacated") (citation modified).

Solano and Maxilin also "made no attempt to supplement their bare request for leave to amend" with any proposed amendment or any explanation of how they would cure the complaint's deficiencies. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006) (explaining that the "absence of supporting information, may, in and of itself, be a sufficient reason for the denial of leave to amend"). Their boilerplate entreaty "failed to provide the district court with the reasons supporting their request [to amend] and with the substance of possible amendments." Silverstrand Invs. v. AMAG Pharms., Inc., 707 F.3d 95, 107-08 (1st Cir. 2013) (affirming the district court's dismissal with prejudice in part on this ground).

Concerningly, Solano and Maxilin misrepresent our precedent in lodging this challenge to the district court's order. They assert that a district court "must explain its reasoning [for denying leave to amend] on the record." They also contend that the "First Circuit [has] consistently held that a district court abuses its discretion by dismissing with prejudice without first allowing amendment where . . . the plaintiff has not had a prior opportunity to do so." But we have never so held. Under our case law, it is "not a basis for reversal" if the district court denies a party's "first motion to amend . . . without explaining its reasoning on the record," so long as the reasons for the denial are apparent from the record itself. Kelly, 827 F.3d at 10

(emphasis added). And we have frequently affirmed denials of first motions to amend. See, e.g., id.[4]

## 2. Motion for Reconsideration

Finally, we find no error, let alone sufficient error to constitute a "manifest abuse of discretion," in the district court's denial of Solano and Maxilin's motion for reconsideration under Federal Rule of Civil Procedure 59(e). ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (citation modified).

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Wright & Miller's Federal Practice & Procedure § 2810.1 (2d ed. 1995)). In their motion before the district court, Solano and Maxilin failed to "clearly establish a manifest error of law" or "present newly discovered evidence," as required for relief under Rule 59(e). Ge, 737 F.3d at 127 (quoting Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)). Instead, they merely declared that they could "cure[]" any deficiencies and that the

---

[4] In addition to misrepresenting the holdings of several cases in their opening appellate brief, Solano and Maxilin also referenced quotations that do not appear in those cases or in any case that we have been able to find. Then, even after Barton pointed out these errors, Solano and Maxilin filed a reply brief that again cited cases for propositions that the cases do not support and quoted language that the cases do not contain.

- 20 -

district court had "misapplied the Duxbury standard" in dismissing their complaint. These conclusory assertions do "no more than reiterate the[ir] [earlier] arguments." Palmer, 465 F.3d at 30. And a motion for reconsideration is "not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Id.

Solano and Maxilin again misrepresent our case law in claiming that we have "repeatedly emphasized" that a "district court abuses its discretion when it fails to articulate any rationale for denying" a Rule 59(e) motion. None of the cases they cite stand for such a proposition. In fact, one of the cases they cite does not even involve a Rule 59(e) motion. See Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001) (discussing motions for relief from judgment under Federal Rule of Civil Procedure 60(b) in the context of a dismissal for want of prosecution). And we have even affirmed a denial of a relator's motion for reconsideration that was issued without explanation. See, e.g., Ge, 737 F.3d at 127-28 (holding that the district court "did not abuse its discretion" in denying relator's Rule 59(e) motion "without opinion").

The district court was well within its discretion to deny Solano and Maxilin's motion for reconsideration, or, in the alternative, for leave to amend their complaint.

## IV. CONCLUSION

For all these reasons, we **<u>affirm</u>** the district court's rulings.